THE LAW OFFICES OF
# FAUSTO E. ZAPATA, JR., P.C.

BROADWAY CHAMBERS BUILDING
277 BROADWAY
SUITE 206
NEW YORK, NY 10007

TEL: (212) 766-9870
FAX: (212) 766-9869
E-MAIL: FZ@FZAPATALAW.COM
WEB: WWW.FAUSTOZAPATA.COM

December 8, 2017

Hon. J. Paul Oetken
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

        Re: Ramon Elias Morcelo and Michael Minaya Perez v. Vinaio Imports, Ltd., and Joan Altes, SDNY Case No. 17 Civ. 868 (JPO)

Dear Judge Oetken,

  Our office represents Defendants in the above referenced matter. This letter is submitted jointly with Samuel & Stein, attorneys for Plaintiffs Ramon Elias Morcelo ("Morcelo"), Michael Minaya Perez ("Minaya"), Rodolfo Pacheco ("Pacheco") and David Mota ("Mota") in the above referenced matter, seeking approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act. Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below.

  This action arises under the Fair Labor Standards Act, the Minimum Wage Act and the New York Labor Law. The Plaintiffs allege that the Defendant violated the wage and hour laws and that the Defendants owe the Plaintiffs back wages, liquidated damages, and penalties. Defendants deny such allegations.

  Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (bifurcated settlements wherein FLSA claims are submitted to the court for approval but parallel NYLL claims are not is permissible because NYLL parallel claims do not require court approval); *compare, Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

  In the absence of Department of Labor approval, the parties must satisfy this Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the

employee's right to a minimum wage or overtime pay, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Id*. (internal quotes omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

I. <u>Plaintiffs' Range of Possible Recovery</u>

Plaintiffs worked for Defendants as Drivers and Loaders for Defendants' wine distribution business. Plaintiffs' duties included, among other things: (1) loading and unloading products from crates and trucks; (2) delivering wine to various locations within New York State; and, (3) picking up wine at various locations in New Jersey.

Plaintiffs allege that they were not paid minimum wage and premium overtime wages, pursuant to New York Labor Law and the Fair Labor Standards Act, and violations of New York Labor Law §§ 195(1)(a) and (3), which relate to the allegation that the Plaintiffs were not provided with wage notices and wage statements.

Defendants maintain that, during the relevant period, the Plaintiffs did not work more than 40 hours per week, and if they worked more than 40 hours in a calendar week, then the amount of additional work at issue was *de minimis* in nature.

Defendants produced alarm records that reflected the open and close times of the Defendants' business for the relevant time periods. The records demonstrated that the Plaintiffs could not have worked the number of hours alleged in their complaint. In calculating a settlement figure, the parties agreed to use a 9:00 a.m. start time and use the alarm time records to determine the end of the shift, irrespective of whether the Plaintiffs actually worked the hours. Moreover, the parties agreed to use a fluctuating workweek method to calculate overtime rates for each week and to not include those weeks where the Defendant sent drivers and loaders to New Jersey to pick up wine products from Defendants' vendors. The following delineates the number of hours over forty that the Plaintiffs could have worked, from November 10, 2014 through the end of their employment with Defendants.

A.   Minaya

| Dates | Weekly Rate of Pay | O/T Hours | Unpaid O/T | Liquidated Damages |
|---|---|---|---|---|
| 11/10/14 – | $425.00 | 54 | $218.03 | $218.03 |

| Dates | Weekly Rate of Pay | O/T Hours | Unpaid O/T | Liquidated Damages |
|---|---|---|---|---|
| 12/31/2014 | | | | |
| 1/1/2015 – 12/31/2015 | $425.00 through 1/31/2015; $450.00 through 7/4/2015; $520.00 through 12/31/2015 | 228 | $1,198.83 | $1,198.83 |
| 1//1/2016 – 12/31/2016 | $520.00 through 3/19/2016; $550.00 through 12/31/2016 | 190.5 | $1,053.10 | $1,053.10 |
| 1/1/2017 – 3/25/2017 | $550.00 | 38.45 | $224.98 | $224.98 |
| Total Unpaid O/T and Liquidated Damages: **$5,389.88** | | | | |

B.   Morcelo

| Dates | Weekly Rate of Pay | O/T Hours | Unpaid O/T | Liquidated Damages |
|---|---|---|---|---|
| 9/6/2015 – 12/31/2015 | $650.00 | 78 | $492.14 | $492.14 |
| 1//1/2016 – 12/31/2016 | $650.00 through 2/1/16; $675.00 through 12/31/2016 | 190 | $1,299.20 | $1,299.20 |
| 1/1/2017 – 3/25/2017 | $675.00 | 38.45 | $276.12 | $276.12 |
| Total Unpaid O/T and Liquidated Damages: **$4,134.92** | | | | |

C.   Pacheco

| Dates | Weekly Rate of Pay | O/T Hours | Unpaid O/T | Liquidated Damages |
|---|---|---|---|---|
| 6/4/2016 – 12/31/2016 | $425.00 through 7/9/2016; $475.00 through 12/31/2016 | 112.85 hours | $535.16 | $535.16 |
| 1/1/2017 – 3/25/2017 | $475.00 | 34.5 | $194.30 | $194.30 |
| Total Unpaid O/T and Liquidated Damages: **$1,458.92** | | | | |

With respect to Mota, Defendants did not have alarm or time records for the period of time that he worked with Defendants, i.e., December 7, 2012, through September 5, 2014. However, Defendants maintain that Mr. Mota was a part-time employee who never worked overtime during the time that he worked for Defendants.

In addition to the above damages, the parties also settled claims alleging violations of N.Y. Labor Law § 195(1)(a) and (3). Each of these claims have a value of $5,000 each, or $10,000 in total.

Plaintiff Minaya calculates that if he were to succeed in all his claims, he would recover $98,082.01 in minimum wage and overtime damages, including liquidated damages and $10,000 in damages pursuant to N.Y. Labor Law 195(1)(a) and (3).

Plaintiff Morcelo calculates that if he were to succeed in all his claims, he would recover $34,692.07 in overtime wages, including liquidated damages and $10,000 in damages pursuant to N.Y. Labor Law 195(1)(a) and (3).

Plaintiff Pacheco calculates that if he were to succeed in all his claims, he would recover $88,155.22 in minimum wage and overtime damages, including liquidated damages and $10,000 in damages pursuant to N.Y. Labor Law 195(1)(a) and (3).

Plaintiff Mota calculates that if he were to succeed in all his claims, he would recover $40,370.92 in overtime wages, including liquidated damages and $10,000 in damages pursuant to N.Y. Labor Law 195(1)(a) and (3).

Defendants deny that Plaintiffs are entitled to any damages. To the extent that Plaintiffs may be entitled to damages, Defendants maintain that Plaintiffs' damages, including liquidated damages and interest, would be significantly lower than what Plaintiffs claim.

II. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses

Counsel for the parties are both experienced in litigating and resolving wage-and-hour matters and both dedicate a significant portion of their practice to doing so. The parties engaged in extensive negotiations lasting several months. As part of this process, the Defendants provided the Plaintiffs with alarm time records that it had in its possession to assist in discussions. After much discussion regarding the strengths and weaknesses and risks of going forward, the parties made a reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with the Defendant's legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

III. The Seriousness of the Litigation Risks Faced By the Parties.

Parties to litigation face risk and expenses that are inherent in litigation, including appeals, and post-judgment collection proceedings. Here, the Plaintiffs also face the risk of no recovery, or a lower or delayed recovery, because the Defendants have the resources to litigate this case through the appeals process. Additionally, Defendants intended to file a summary judgment motion seeking dismissal on the grounds that the Plaintiffs were not covered under FLSA because Plaintiffs, as drivers of commercial motor vehicles and drivers' helpers, are subject to the U.S. Department of Transportation's jurisdiction under the Motor Carrier Act and are regulated by the DOT's Federal Motor Carrier Safety Administration with respect to their qualifications and hours. Therefore, Plaintiffs are exempt from the time and a half rule pursuant to the FLSA's "motor carrier exemption." See 29 U.S.C. § 213(b)(1). Hence, Plaintiffs ran the risk that if Defendants were successful in its summary judgment motion, this Court could dismiss the Plaintiffs' FLSA claims, and potentially all of the claims if the Court did not assume pendent jurisdiction over the NYLL claims.

On the other hand, the Defendants acknowledge that they may have exposure associated with the Plaintiffs' claims and have assessed the likelihood of successfully defending this matter against the benefits of resolving this matter at this stage of the litigation process.

IV. <u>Whether the Settlement Agreement is the Product of Arm's-Length Bargaining Between Experienced Counsel.</u>

After discussing the strengths and weaknesses and risks of going forward, the parties made the reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with Defendants' legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

V. <u>The Possibility of Fraud or Collusion.</u>

Attorneys who are experienced in labor and employment litigation matters, including wage and hour litigation under the FLSA, represented the parties.

Counsel for both sides utilized their experience and spent almost ten months thoroughly analyzing the claims and defenses, determining potential damages for Plaintiffs, and engaging in arms-length negotiations to achieve a fair resolution for the parties. The parties themselves were also heavily involved in the settlement negotiations and had the opportunity to carefully review the terms of the settlement agreement before executing it. Thus, there was no possibility of fraud and collusion throughout the process.

The parties represent to the Court that the settlement agreement is fair to the Plaintiffs, reasonably resolves bona fide disagreements between the Plaintiffs and Defendants about the merits of the Plaintiffs' claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

On this basis, the settlement reached is fair and reasonable.

The parties agreed to settle all of the claims, including statutory attorneys' fees for $75,000. The settlement is to be broken down as follows:

A. Minaya

   a. $9,371.27 in back wages less applicable tax withholdings, under the FLSA;
   b. $9,371.27 in FLSA and NYLL liquidated damages in connection with the unpaid overtime wages;

B. Morcelo

   a. $3,314.66 in back wages less applicable tax withholdings, under the FLSA;
   b. $3,314.66 in FLSA and NYLL liquidated damages in connection with the unpaid overtime wages;

C. Pacheco

   a. $8,422.81 in back wages less applicable tax withholdings, under the FLSA;
   b. $8,422.81 in FLSA and NYLL liquidated damages in connection with the unpaid overtime wages;

D. Mota

   a. $3,857.25 in back wages less applicable tax withholdings, under the FLSA;
   b. $3,857.25 in FLSA and NYLL liquidated damages in connection with the unpaid overtime wages;

E. Samuel & Stein's Attorneys' Fees and Costs

   a. Costs: $502.00
   b. Legal fees: $24,498.00

Under the Fair Labor Standards Act and New York's Labor Law, the Plaintiffs are entitled to an award of reasonable attorneys' fees. As an initial matter, courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases. *See, Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, 2013 WL 5308277, at *1 (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs retainer agreement, and noting that

such a fee arrangement "is routinely approved by the courts in this Circuit"); *Palacio v. E\*TRADE Fin. Corp.*, No. 10-CV-4030 (LAP), 2012 U.S. Dist. LEXIS 88019, 2012 WL 2384419, at \*6 (S.D.N.Y. June 22, 2012) ("[T]he percentage of recovery method ... is consistent with the 'trend in this Circuit.'" (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (discussing common fund class actions))).

With regards to statutory attorneys' fees, courts in this District routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (EDNY 2012) (in this case, Justin Zeller was awarded approximately $500 an hour in an FLSA case. Mr. Zeller and Defendant's counsel were classmates at The Benjamin N. Cardozo School of Law, they graduated the same year, they both maintain offices in the same building, and they have both practiced labor law for approximately the same number of years); *Kahlil v. Original Old Homestead Rest.*, 657 F. Supp. 2d 470 (awarding hourly rate of $400 for a "senior lawyer with 25 years experience"); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (EDNY 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants") (*Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS 58179, 2011 WL 2173870, at \*2 (EDNY May 31, 2011) (awarding $400 to an attorney with 7 years experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs' counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at \*3 (S.D.N.Y. Sept. 1, 2010).

Michael Samuel is a founding partner of Samuel & Stein. He has practiced law since 1993, has been admitted in the state of New York since 1994, and focuses his practice almost exclusively on wage-and-hour cases, serving as counsel of record in more than 350 such cases. Mr. Samuel is admitted to practice in the Southern and Eastern Districts of New York. Mr. Samuel's regular hourly rate for matters such as these is $400, an amount commensurate with other practitioners with a similar amount of experience in this locality who represent clients in matters such as this. Ruchama L. Cohen has practiced law since 2015, almost exclusively in the wage-and-hour area. She became licensed to work in the State of New York in January 2016. Ms. Cohen is also admitted to practice in the State of New Jersey, the District of New Jersey, and the Southern and Eastern Districts of New York. Her regular hourly rate is $250.

With regards to attorneys' fees, Plaintiffs' counsel accepted this case with the understanding that Plaintiffs' counsel would fund the litigation and would receive a contingency of approximately 33.3% of the gross recovery amount; in this case **$24,498.00**. The Plaintiffs agreed to these terms and signed a retainer stating the same.

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d

Cir. 2000). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *10 (*citing Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (internal citations omitted). Courts commonly award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded).

Here, the multiplier would be in the range of 1.6. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

At this time, Defendants take no position with respect to Plaintiffs' counsel's request for attorneys' fees.

On this basis, the parties agree that this settlement is an equitable resolution to the instant matter.

Very truly yours,

*[signature]*

Fausto E. Zapata, Jr.

C:   M. Coviello
     M. Samuel
     R. Cohen
     File